## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release ("Agreement") is entered into by and between John Burger (who together with his heirs, executors, administrators, trustees, attorneys, agents, and/or permitted assigns is referred to herein as "Burger") and AVI Foodsystems, Inc. (which together with its related, affiliated, and associated companies, direct or indirect parent or subsidiary companies, divisions, predecessors, successors, and assigns, and their owners, officers, directors, agents, employees, and attorneys is referred to herein as the "Company"). This Agreement is entered into for the purpose of fully and totally releasing and settling all claims or disputes that Burger has or may have against the Company arising at any time from the beginning of time to the present, and including, but not limited to, Burger's employment with the Company.

## RECITALS

**WHEREAS**, a dispute exists between Burger and the Company regarding Burger's employment with the Company;

**WHEREAS**, on June 12, 2018, Burger filed a lawsuit against the Company in the United States District Court for the Western District of Pennsylvania, Civil Action No. 2:18-cv-768, in which he asserted a claim for unpaid overtime pursuant to the Fair Labor Standards Act (referred to herein as the "Lawsuit");

**WHEREAS,** the Company denies all allegations made by Burger in the Lawsuit;

**WHEREAS**, Burger and the Company have reached an agreement in full and final settlement of all claims that were asserted by Burger or could have been asserted by Burger in the Lawsuit, as well as all claims that Burger may have against the Company;

**WHEREAS**, the Company has offered and Burger has accepted consideration that Burger deems to be of value to him and in addition to that which the Company is required to provide Burger under the circumstances;

**WHEREAS**, Burger agrees to dismiss the Lawsuit with prejudice and release all claims he may have against the Company; and

**WHEREAS**, Burger and the Company desire to reduce their agreement to writing;

**NOW THEREFORE**, with the intent to be legally bound, in consideration of the mutual agreements hereinafter contained, being good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to avoid costly litigation, Burger and the Company agree as follows:

1. **Consideration:** The Company hereby agrees to remit the total gross amount of Nineteen Thousand Dollars and No Cents ($19,000.00) to Burger in the manner set forth below as consideration for the release in Paragraph 3 hereof, the promises and agreements made by Burger in this Agreement, and in full accord, satisfaction, and final compromise settlement of

any and all claims, charges, demands, actions, causes of action, suits, damages, losses, court costs, attorneys' fees, and expenses, of any and every nature whatsoever, known or unknown – including, but not limited to, any and all claims that Burger may have or claim to have relating to his employment with the Company and the compensation paid to him by the Company, as well as any and all claims that Burger may have or claim to have against the Company:

    a.    A check made payable to Burger's attorneys, "Lemberg Law, LLC," in the amount of Seven Thousand Six Hundred Dollars and No Cents ($7,600.00) for attorneys' fees, costs, and expenses. Burger understands that some or all of the amount specified in this paragraph may be taxable and that the Company is obligated to report the above amount to the proper taxing authorities and to provide the proper Form 1099 documentation.

    b.    A check made payable to "John Burger" in the gross amount of Five Thousand Seven Hundred Dollars and No Cents ($5,700.00) for backpay wages, minus all applicable taxes and payroll deductions required by law, as payment for alleged unpaid wages. The Company is obligated to report the above amount to the proper taxing authorities and to provide the proper W-2 documentation.

    c.    A check made payable to "John Burger" in the amount of Five Thousand Seven Hundred Dollars and No Cents ($5,700.00) for liquidated damages. Burger understands that some or all of the amount specified in this paragraph may be taxable and that the Company is obligated to report the above amount to the proper taxing authorities and to provide the proper Form 1099 documentation.

Prior to receipt of these payments, Burger must provide counsel for the Company with a properly executed W-4 form from him, and his attorneys must provide counsel for the Company with a properly executed W-9 form from them. The aforementioned payments shall be made within 10 business days of the later of the following two dates: (1) the Effective Date of this Agreement (as defined below) or (2) the date counsel for the Company receives the forms referenced above from both Burger and his attorneys and a properly executed copy of this Agreement. Tender of the sums detailed above shall constitute an accord and satisfaction and satisfy any and all obligations of the Company to Burger, whether the same be legal, contractual, equitable, statutory, or otherwise. Burger will receive no further payments or compensation from the Company, and Burger shall be responsible for all taxes associated with these payments.

    2.    **Income Taxes:** Burger acknowledges and agrees that the Company made no representations regarding the tax consequences of any amounts received by Burger pursuant to this Agreement. Burger agrees that he will pay any and all taxes that may be due on account of any sums of money he receives pursuant to this Agreement and that the Company shall not be liable for any portion of any such taxes.

    3.    **Release and Hold Harmless:** Burger hereby promises not to sue and forever releases and discharges the Company from any and all charges, claims, demands, actions, causes of action, or suits, at law or in equity, of whatsoever kind or nature, losses, costs, attorneys' fees, and expenses and damages of any kind, known or unknown, which he may now have or may

now or hereafter assert against the Company, including, but not limited to, (1) all claims that Burger may have or claim to have arising out of or resulting from his employment with the Company; (2) all claims under the Fair Labor Standards Act, Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law, or any other statutory or common law provisions; (3) all claims for personal injury and emotional damages; (4) all claims for unpaid compensation, overtime, minimum wages, and benefits; (5) all contractual or quasi-contractual rights or claims arising from Burger's employment; (6) all claims for violation of any rights under the common law; (7) all claims Burger asserted or could have asserted in the Lawsuit; and (8) all claims for violation of any rights under any federal, state, or local statute, regulation, or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Law, the Pennsylvania Human Relations Act, the Family and Medical Leave Act, the Rehabilitation Act of 1973, the Reconstruction Act of 1866, the National Labor Relations Act, the Employee Retirement Income Security Act of 1974, the Consolidated Omnibus Budget Reconciliation Act, and the Sarbanes Oxley Act, all as amended to the date hereof, and all other federal, state, and local statutes, rules, regulations, ordinances, orders, and common law principles, including *qui tam* actions, except those claims excluded in Paragraph 4 of this Agreement. This Agreement does not waive or release any rights or claims Burger may have under the Age Discrimination in Employment Act that arise after the date Burger signs this Agreement.

4. **Claims Excluded from the Agreement:** This Agreement does not apply to any claims or rights that may arise after the date Burger signs this Agreement or to any vested rights Burger may have under any employee benefit plans. Also excluded from this Agreement are any claims that cannot be released or waived by law. Nothing in this Agreement shall be construed to prohibit Burger from filing a charge or complaint challenging the validity of this Agreement; filing a charge or complaint with, reporting possible violations of any law or regulation, making disclosures to, and/or participating in any investigation or proceeding conducted by the National Labor Relations Board, Equal Employment Opportunity Commission, Department of Labor, Pennsylvania Human Relations Commission, Securities and Exchange Commission, and/or any federal, state, or local agency charged with the enforcement of employment laws; or participating in any investigation or proceeding conducted by such administrative agencies. Notwithstanding the forgoing, to the extent not precluded by law, Burger waives any right to monetary damages or other relief arising from any such charges, complaints, or claims. Further, nothing set forth herein prevents Burger from exercising his rights under Section 7 of the National Labor Relations Act.

5. **Dismissal of Lawsuit with Prejudice:** In exchange for the consideration set forth herein, Burger authorizes and directs his attorneys to dismiss the Lawsuit with prejudice and with each party bearing its own costs and attorneys' fees, except as provided in this Agreement. A fully executed and mutually agreed-upon Stipulation for Dismissal with Prejudice must be filed by counsel for Burger within five business days of receipt of the settlement payments by Burger's attorneys. Burger and his attorneys agree to take any and all necessary action to assist in the dismissal of the Lawsuit with prejudice. If the Court refuses or fails to dismiss all of the claims against the Company with prejudice, the Company shall have the option

to: (1) declare this Agreement null and void at which time Burger will immediately return all monies set forth herein to the Company's counsel or (2) seek to enforce this Agreement.

6. **Acknowledgments**: Burger acknowledges and agrees that, upon receipt of the settlement payment herein, he has been properly paid for all hours worked, that he has received all overtime and minimum wage payments to which he is entitled, that he has been provided all compensation that is owed to him, that he has been properly provided any leave of absence because of his or a family member's health condition, and that he has not been subjected to any improper treatment, conduct, or actions due to or related to his request for, or his taking of, any leave of absence because of his own or a family member's health condition. Burger also acknowledges and agrees that he has not suffered any on-the-job injury for which he has not already filed a claim. Burger further acknowledges and agrees that, by virtue of the Company's promises, representations, and warranties as set forth in this Agreement, he has received fair economic value for any and all potential claims or causes of action he may have against the Company and that he is not entitled to any other damages or relief.

7. **No Future Charges, Claims, or Lawsuits**: With the exception of those matters referred to in Paragraph 4, Burger promises never to file a claim, lawsuit, demand, action, or otherwise assert any claims that are released in Paragraph 3 of this Agreement. Burger represents that, with the exception of the Lawsuit, he has not filed any complaints, claims, grievances, or actions against the Company with any entity, including any state, federal, or local agency or court. In addition, Burger agrees not to voluntarily cooperate with or participate in any litigation, charge, claim, prosecution, or investigation against the Company or its affiliates, officers, directors, employees, former employees, or agents, except as required by law, in which case Burger will testify truthfully. Burger further agrees not to solicit, encourage, or assist any former, current, or future employee of the Company to pursue claims against the Company, unless he is required by law to provide testimony in a legal proceeding.

8. **No Re-employment**: Burger agrees that he shall not apply for employment in any capacity with the Company in the future and waives any right he may have to seek, obtain, or hold employment in any capacity in the future with the Company. Should he make any application to obtain such employment, his applications may be disregarded and the Company will incur no liability. Further, Burger will not accept such employment if it is offered by the Company, and Burger consents to the termination of his employment at any time without counsel or liability, should it be determined that he holds employment with the Company.

9. **Confidentiality**: Burger warrants that, to date, he has kept this document and all of its terms and conditions confidential, including the fact that he reached a settlement of his claims with the Company. Burger represents and warrants that he has not discussed, disclosed, or revealed the Agreement or its terms, directly or indirectly, to any person, corporation, or other entity. Burger agrees to continue to maintain the confidentiality of this Agreement, which means that he shall not, presently or in the future, discuss, disclose, or reveal its existence, except disclosing the existence of this Confidential Settlement Agreement in an agreed-upon Stipulation of Dismissal with prejudice filed with the Court, or its terms or conditions to any person, corporation, or entity, except to his financial advisors, attorneys, immediate family members, or as required by law, but only if he first advises them of this confidentiality provision. In the event

any individual to whom Burger provides information under this provision violates the confidentiality obligation set forth herein, such violation will be imputed to Burger and he will have breached this provision. Additionally, Burger shall not, presently or in the future, discuss, disclose, or reveal the Agreement's existence or its terms or conditions to any employee or former employee of the Company. Burger agrees that the only comment he will make about this matter is that "the Lawsuit has been dismissed," without making any reference to this Agreement or its terms. Burger agrees that the foregoing confidentiality provisions are material terms and conditions of this Agreement. As such, it is expressly agreed, acknowledged, and understood that any disclosure in violation of the foregoing confidentiality provisions would be a material breach, and that any breach of these terms as established in a court of law shall result in Burger being held liable for damages and injunctive relief for each violation. Burger further agrees that damages of any breach of this confidentiality provision will be extremely difficult to determine. Because of this difficulty, Burger agrees that in the event of an adjudication that he has breached the confidentiality provisions of this Agreement, he must pay the Company the sum of One Thousand Dollars and Zero Cents ($1,000.00) for each proven breach of this confidentiality provision. Notwithstanding any such relief, all of the other terms of this Agreement, including, without limitation, Burger's release of all claims against the Company shall remain in full force and effect. The remedies provided for in this provision shall not be construed to be exclusive and do not bar any other claims for relief, either at law or equity. It is the intent of the parties that all terms of this Agreement may be disclosed to a court of law in an action to enforce the terms of the Agreement and shall be binding and enforceable upon them in a court of law.

10. **Non-Disparagement:** Burger agrees not to make or utter any disparaging remarks about the Company, public or private comments, statements, and/or communications which in any way disparage or reflect negatively on the Company, unless testifying subject to court order or subpoena. Nothing in this Agreement shall prohibit Burger from reporting possible violations of any law or regulation to any governmental agency or entity or making other disclosures that are protected under the whistleblower provisions of federal or state laws or regulations. For its part, the Company agrees to instruct any employee of the Company who has knowledge of this Agreement not to make or utter any disparaging remarks about Burger, public or private comments, statements, and/or communications which in any way disparage or reflect negatively on Burger, unless testifying subject to court order or subpoena.

11. **Acknowledgment of Rights and Waiver of Claims Under the Age Discrimination in Employment Act:** Burger acknowledges that he is knowingly and voluntarily waiving and releasing any rights he may have under the Age Discrimination in Employment Act of 1967 ("ADEA Claims"). In connection with Burger's release of ADEA Claims, Burger acknowledges that the consideration given for the waiver and release in the preceding paragraphs herein is in addition to anything of value to which he was already entitled. Burger further acknowledges that he has been advised by this writing, as required by the Older Workers' Benefit Protection Act, that: (a) his waiver and release does not apply to any rights or claims that may arise after his execution of this Agreement; (b) he should consult with an attorney (and has done so) prior to executing this Agreement; (c) he has at least 21 days to consider this Agreement; (d) he has 7 days following his execution of this Agreement to revoke the Agreement; and (e) this Agreement will become effective on the eighth day following Burger's execution of this Agreement ("Effective Date"). Burger may revoke the Agreement by giving

formal, written notice of his revocation addressed to Timothy S. Anderson, Littler Mendelson, P.C., 1100 Superior Avenue East, 20th Floor, Cleveland, OH 44114, which must be received by Mr. Anderson by the close of business on the seventh day following execution of this release by Burger. Burger understands he may use as much of the 21 day period as he wishes prior to signing the Agreement. Burger agrees that if he signs and returns this Agreement before the 21 days have passed, he does so of his own free will. Burger further agrees that he has not been asked by the Company to shorten the time period for considering whether to sign the Agreement. Burger agrees that the Company has not threatened to withdraw or alter the benefits due to him under this Agreement prior to the expiration of the 21 day period, nor has the Company provided different terms to him if he decides to sign the Agreement prior to the expiration of the 21 day period. Burger agrees that changes to the Agreement, whether material or immaterial, do not restart the running of the 21 day consideration period. If Burger revokes this Agreement, it shall not be effective or enforceable, and he shall not receive any of the compensation described in Paragraph 1 of the Agreement. Burger understands that rights or claims under the ADEA that may arise after the date this Agreement is executed by all parties hereto are not waived.

12. **Company Property:** Burger represents and warrants that, as of the date of this Agreement, he does not have in his possession, custody, or control any documents, paper or electronic, originals or copies, compilations, extracts, or summaries, containing the Company's trade secrets or confidential information. Burger further represents and warrants that, prior to signing this Agreement, he has returned all Company property, as well as all documents, both paper and electronic, originals or copies, containing the Company's trade secrets or confidential information that were in his possession and any other material, including handwritten notes, made or derived from that information. Burger also represents and warrants that he has not misappropriated any of the Company's trade secrets or confidential information that he may have had in his possession, custody, or control.

13. **Wage Deduction Orders/Assignment:** Burger represents and warrants that he is not subject to any wage garnishment or deduction orders. Burger further warrants and represents that he has not assigned, transferred, or conveyed at any time, to any person or entity, or attempted to assign, transfer, or convey to any person or entity, any alleged right, claim, or cause of action against the Company relating in any way to any claims released in this Agreement. Burger agrees to indemnify and hold the Company harmless from any and all claims, demands, expenses, costs, attorneys' fees, and causes of action asserted by any person or entity due to a violation of this provision.

14. **Breach:** It is understood and agreed that if, at any time, a violation of any term of this Agreement is asserted by any party hereto, that party shall have the right to seek specific performance of that term and/or any other necessary and proper relief, including, but not limited to, damages, from a court of competent jurisdiction, and the prevailing party shall be entitled to recover its reasonable attorneys' fees and reasonable costs.

15. **Entirety of Agreement and Severability:** Burger and the Company agree that if any provision of this Agreement is declared invalid by a court of competent jurisdiction, such invalidation shall not affect the remaining provisions of this Agreement, which shall remain in full force and effect. This Agreement may not be amended except by a writing signed by all the parties. Burger and the Company acknowledge that no promise or agreement not herein

expressed has been made to them and that this Agreement contains the entire agreement between the parties hereto with respect to the matters addressed herein. It supersedes all prior discussions, negotiations, and agreements with respect to the matters addressed herein, with the exception of any non-competition, non-solicitation, and confidentiality agreements or obligations between Burger and the Company.

16. **Interpretation:** This Agreement has been drafted jointly and there shall be no presumption of construction against any party. The parties agree that the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party.

17. **Applicable Law:** This Agreement shall be governed by, interpreted under, and enforced in accordance with the laws of Pennsylvania.

18. **Counterparts:** This Agreement may be executed in multiple counterparts, via facsimile, email, PDF, and/or photocopy signature, each of which shall be deemed an original.

19. **Neutral Reference:** The Company agrees that it will limit its response to inquiries for a reference from any of Burger's future potential employers to confirmation of his dates of employment. In order to secure this neutral reference, Burger must direct any prospective employer to The Work Number at www.theworknumber.com and designate the Company's employer code – 15452.

20. **Representations:** By entering into this Agreement, and in connection with the release of claims as set forth in Paragraph 3, the parties acknowledge, agree, and represent that:

   a. They have entered into this Agreement in order to avoid the substantial costs, inconvenience, and uncertainties of litigation. The execution of this Agreement shall not constitute any admission by the Company that it violated any federal, state, or local statute, ordinance, rule, regulation, or common law, or that any of Burger's claims had any merit whatsoever. To the contrary, the Company expressly denies that it violated any of Burger's rights or that it harmed Burger in any way. No part of this Agreement, nor any actions of the Company in settling this matter, shall be considered, constitute, or be cited as an admission by the Company of any wrongful conduct or violation of law or of any act alleged by Burger. Nothing herein shall preclude the Company from introducing this Agreement to establish that Burger's claims were settled, compromised, and released according to the terms of this Agreement;

   b. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, administrators, and representatives, including, but not limited to, attorneys, executors, successors, and assigns;

   c. No promise or inducement has been offered to Burger except as herein set forth;

7

d.     This Agreement is being executed by Burger and the Company without reliance upon any statements by the other or their representatives concerning the nature or extent of any claims or damages or legal liability therefor;

e.     This Agreement has been written in understandable language, and all provisions hereof are understood by Burger and the Company;

f.     Burger and the Company have consulted with attorneys of their own choosing prior to executing this Agreement;

g.     Burger has executed this Agreement of his own free will;

h.     Burger will receive, pursuant to this Agreement, consideration in addition to anything of value to which he is already entitled;

i.     All claims which were (or could have been) asserted by Burger are hereby released; and

j.     Burger has been given a reasonable period of time within which to consider this Agreement.

21.     **BURGER ACKNOWLEDGES THAT THIS IS A RELEASE AND THAT HE IS RELINQUISHING ALL OF HIS RIGHTS TO SUE. BURGER ALSO ACKNOWLEDGES THAT HE HAS CONSULTED WITH, AND BEEN ADVISED BY, AN ATTORNEY OF HIS CHOICE BEFORE EXECUTING THIS AGREEMENT AND RELEASE. BURGER FURTHER ACKNOWLEDGES THAT HE HAS BEEN AFFORDED THE OPPORTUNITY TO CONSIDER THIS AGREEMENT AND RELEASE FOR A REASONABLE PERIOD OF TIME, THAT HE HAS CAREFULLY READ IT, THAT HE COMPLETELY UNDERSTANDS ITS CONTENTS, THAT HIS ATTORNEYS HAVE EXPLAINED ALL OF ITS CONTENTS AND RAMIFICATIONS, AND THAT HE HAS EXECUTED IT OF HIS OWN FREE WILL, ACT, AND DEED WITHOUT COERCION AND WITH FULL KNOWLEDGE OF THE NATURE AND CONSEQUENCES THEREOF.**

IN WITNESS WHEREOF, John Burger and AVI Foodsystems, Inc. have freely, voluntarily, and knowingly executed this Agreement.

**AGREED:**

_____
John Burger

Dated: 11/04/2018

_____
AVI Foodsystems, Inc.

Dated: 11/20/2018